**AEGIS LAW FIRM, P.C.**
Samuel A. Wong (State Bar No. 217104)
Kashif Haque (State Bar No. 218672)
Jessica L. Campbell (State Bar No. 280626)
Samantha A. Smith (State Bar No. 233331)
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: 949-379-6250
Facsimile: 949-379-6251

Attorneys for Plaintiff Tasneem L. Mohamed

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASNEEM L. MOHAMED, on behalf of herself and all others similarly situated,<br><br>             Plaintiff,<br>    vs.<br><br>KELLOGG COMPANY and DOES 1 through 10, inclusive,<br><br>             Defendants. | Case No. 14-cv-02449-L-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Date: August 20, 2018<br>Time: 10:30 a.m.<br>Ctrm: 5B (5th Floor – Schwartz)<br>Judge: Hon. M. James Lorenz<br><br>[NO ORAL ARGUMENT, UNLESS REQUESTED BY THE COURT] |

# TABLE OF CONTENTS

I.  INTRODUCTION ....................................................................7

II.  COMMON EVIDENCE ADDUCED TO DATE....................................8

    A.  Kellogg Has Used Common Labels and Common Misrepresentations Throughout the Class Period...............................................8

    B.  Kellogg Has Used Common Non-Natural Ingredients in the Products Throughout the Class Period................................................9

    C.  Common Evidence Will Establish that the "Made With Natural Ingredients" Language is Deceptive to Reasonable Consumers. ......10

    D.  Common Evidence Shows that "Made With Natural Ingredients" Claims Are Material To Purchasers When Deciding to Purchase Gardenburger Products. ..................................................11

    E.  Plaintiff Purchased Gardenburger Products.......................................12

    F.  Class-wide Relief Can be Proved on a Common Basis. ....................13

III.  THE REQUIREMENTS FOR CERFTICATION PURSUANT TO FED. R. CIV. P. 23(a) AND 23(b)(3) ARE MET ...............................................14

    A.  Standard...........................................................................14

    B.  Plaintiff Has Standing and the Proposed Class is Ascertainable.......15

        1.  Plaintiff Has Standing................................................16

        2.  The Class is Ascertainable..........................................16

    C.  The Rule 23(a) Requirements Are Satisfied. ....................................16

        1.  Rule 23(a)(1) – Numerosity......................................16

        2.  Rule 23(a)(3) – Typicality. .........................................17

        3.  Rule 23(a)(4) – Adequacy of Representation............................19

    D.  Rule 23 (a)(2) Commonality/Rule 23(b)(3) Predominance..............20

        1.  Common Questions Exist for Plaintiff and the Class. ..............21

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

2.    Common Questions of Law Predominate as to Plaintiff's
Consumer Protection Claims.......................................................22

3.    Common Questions of Law Predominate as to Plaintiff's
Breach of Express Warranty Claim...........................................24

4.    Common Evidence Will Prove Plaintiff's Remedies.................25

E.   Rule 23(b)(3) – Superiority..................................................................29

1.    Rule 23(b)(3)(A). .......................................................................29

2.    Rule 23(b)(3)(B). .......................................................................30

3.    Rule 23(b)(3)(C). .......................................................................30

4.    Rule 23(b)(3)(D). .......................................................................31

IV.    CONCLUSION ........................................................................................32

# TABLE OF AUTHORITIES

Cases

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)..................................21

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387 PJH, 2014 WL 600972 (N.D. Cal. Jan. 7, 2014) ..................26

*Astiana v. Dreyers Grand Ice Cream, Inc.*,
    No. C-11-2910 EMC, 2012 WL 2990766 (N.D. Cal. July 20, 2012) ............13

*Astiana v. Kashi Co.*, 291 FRD 493 (S.D. Cal. 2013) ........................................22

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558 (S.D. Cal. 2012) ...................................................13, 17, 18, 19

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) .............................................29

*Brazil v. Dole Packaged Foods*, LLC,
    No. 12-CV-01831-LHK,
    2014 U.S. Dist. LEXIS 74234 (N.D. Cal. May 30, 2014).......................22, 27

*Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ...........14, 16, 27

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................30, 31

*Chavez v. Blue Sky Natural Beverage Co.*,
    268 F.R.D. 365 (N.D. Cal. 2010)...................................................13, 17, 18, 25

*Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663 (2006) ...........25

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) .....................................25, 29

*Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978) .......................................15

*Dei Rossi v. Whirlpool Corp.*,
    Case No.  2:12-cv-00125-TLN-CKD,
    2015 U.S. Dist. LEXIS 55574 (E.D. Cal. April 27, 2015) .....................14, 27

*Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102 (N.D. Cal. 2010)............................28

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .........................................15

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) .......................15

*Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388 (2002)....................23

*Gay v. Waiters' & Dairy Lunchmen's Union*,
    549 F.2d 1330 (9th Cir. 1977) ......................................................................17

*Gen. Tel. Co. v. Falcon*, 457 U.S. 147 (1982) ...............................................15, 19

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012) ........................29

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................18, 19, 20

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ...........................18

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964)........17

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974) ............31

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)....................................16

*In re Conagra Foods, Inc.*, 90 F.Supp.3d 919 (C.D. Cal. 2015)..................14, 27

*In re Emulex Corp.*, 210 F.R.D. 717 (C.D. Cal. 2002)......................................20

*In re Ferrero Litig.*, 278 F.R.D. 552 (S.D. Cal. 2011) ......................................19

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) ..................24

*In re Tobacco II cases*, 46 Cal. 4th 298 (2009) ..........................................19, 23

*In re Worldcom Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003) ...................30

*Johns v. Bayer Corp.*,
    280 F.R.D. 551, 558, n. 5 (S.D. Cal. Feb. 3, 2012) ...................10, 18, 21, 29

*Johnson v. General Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011) ....................22

*Jordan v. Paul Financial, LLC*, 285 F.R.D. 435 (N.D. Cal. 2012) ...................31

*Koh v. S.C. Johnson & Son, Inc.*,
    No. C-09-00927 RMW, 2010 WL 94265 (N.D. Cal. Jan. 6, 2010) ..............13

*Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) .........................12, 16, 24, 26

*Langan v. Johnson & Johnson Consumer Cos.*,
    Case No. 3:13-cv-1470,
    2017 U.S. Dist. LEXIS 35703 (D. Conn., March 13, 2017) ..................14, 27

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013).............................25

*Mass. Mut. Life Ins. Co v. Sup. Ct.*, 97 Cal. App. 4th 1282 (2002)...................24

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983) ...................15

*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735 (1980) ......................23

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985)...........................................30

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015).........25

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) ......................................17, 20

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ...........21

*Schwartz v. Upper Deck Co.*, 183 F.R.D. 672 (S.D.Cal.1999) .........................16

*South Bay Chevrolet v. General Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) ....................................................................22, 23

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...........................................19

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011) .........................23

*Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150 (9th Cir. 2016) .........25

*Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011) .......................14, 20, 21

*Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1214 (2010) ...............................24

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-2724-LHK,
    2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014).............................22

*West v. Circle K Stores, Inc.*,
    Case No. CIV. S-04-0438 WBS GGH,
    2006 WL 1652598 (E.D. Cal. June 12, 2006) ...............................................30

*Westways World Travel, Inc. v. AMR Corp.*,
    218 F.R.D. 223 (C.D. Cal. 2003) ...................................................................28

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ....................21, 23

*Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573 (C.D. Cal., 2011).......25

*Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ..........25

*Zeisel v. Diamond Foods, Inc.*,
    No. C 10-01192 JSW,
    2011 WL 2221113 (N.D. Cal. June 7, 2011).................................................15

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) ..............15

<u>Statutes</u>

21 U.S.C. § 343(a)(1)............................................................................................22

28 U.S.C. § 1332(a) ..............................................................................................17

28 U.S.C. § 1332(d) ..............................................................................................17

28 U.S.C. § 1441....................................................................................................17

Cal. Civ. Code § 1770 ..................................................................24

Cal. Health & Safety Code § 110100(a) ..........................................22

Cal. Health & Safety Code § 110660 ..............................................22

Fed. R. Civ. P. 23(a) ....................................................................15

Fed.R.Civ.P. 23(b)(3) ...................................................15, 20, 22, 29

Rules

Cal. Bus. & Prof. Code § 1780(a)(1) ..............................................28

Civ. Code § 1780 .........................................................................28

Fed.R.Civ.P. 23(b)(3) ...............................................................7, 15

Fed.R.Civ.P. 23(a)(2) ....................................................................22

Fed.R.Civ.P. 23(a)(3) ....................................................................17

Fed.R.Civ.P. 23(a)(4) ....................................................................19

Rule 23(b)(3)(D) ...........................................................................31

Treatises

Newberg on Class Actions § 17:39 (4th ed.) ....................................28

Plaintiff, on behalf of herself, and other similarly-situated California consumers ("Plaintiff"), submits this Memorandum of Points and Authorities in Support of Plaintiff's Motion for Class Certification.

## I.      INTRODUCTION

Plaintiff seeks to certify a class pursuant to Fed. R. Civ. Proc. 23(b)(3) to hold Defendant Kellogg Company ("Kellogg" or "Defendant"), which manufactures Gardenburger products ("Gardenburger") accountable for its deceptive "Made With Natural Ingredients" claims on the Gardenburger packaging. Gardenburger has disseminated "Made With Natural Ingredients" claims at the point of sale to create the impression that its Gardenburger products are made with natural ingredients and are more wholesome than other products. This is done for one purpose: to gain a competitive advantage by exploiting consumer preference for natural food products.

Plaintiff seeks certification of the following Class:

All persons who, between July 29, 2010 to approximately January, 2016[1], purchased Gardenburger products in the State of California that were labeled "Made With Natural Ingredients" but contained hexane processed soy ingredients.

Class certification is appropriate because this case centers on Kellogg's uniform policy and practice of labeling Gardenburger products as being "Made With Natural Ingredients," despite the fact the Gardenburger food products contain unnatural ingredients, including soy proteins and soy lecithin that are processed with hexane, a federally recognized synthetic and toxic chemical. Evidence adduced to date demonstrates that Class members' claims each arise

---

[1] As discussed below, Defendant removed the "Made With Natural Ingredients" language from the Gardenburger products in or around January, 2016; therefore, the Class period ends in or around January, 2016.

from Gardenburger's uniform course of conduct, and that all the factual issues necessary to resolve Plaintiff's and class members' dispute with Kellogg are common issues that can be proven on a class-wide basis through documents, testimony of key corporate personnel, and expert testimony.

As set forth below: (1) Kellogg's representations at the point of sale; (2) the falsity of such representations; (3) the materiality of such representations; and (4) the amount of restitution or damages arising from the representations can be proven by classwide evidence. These issues predominate over individual issues, if any, and a class action is a superior method of adjudicating this dispute. Thus, this Court should certify a class pursuant to Rule 23(b)(3).

## II. COMMON EVIDENCE ADDUCED TO DATE

### A. Kellogg Has Used Common Labels and Common Misrepresentations Throughout the Class Period.

Discovery to date establishes that Kellogg has used common labels with uniform "Made With Natural Ingredients" representations on the Gardenburger products throughout the Class period (i.e. July 29, 2010 to January, 2016, when Defendant removed the language from packaging). (Ex. A[2] ("Natural" Labels); Ex. B, 30b6 Deposition of Kirsten Neely ("Neely Depo") at p. 21:2-23:14, 28:10-23.)

In or around 2007, Kellogg acquired the Gardenburger brand. (Ex. C, 30b6 Deposition of Leigh-Ann Howenstine ("Howenstine Depo") at p. 14:3-6.) There are five flavors, or "skus," that made up the Gardenburger product line throughout the Class period, all of which also contain soy protein and/or soy lecithin (i.e.

---

[2] Unless otherwise noted, all references to "Ex(s)." are to the Declaration of Samantha A. Smith in Support of Plaintiff's Motion for Class Certification ("Smith Decl.").

hexane processed soy ingredients (*see* FAC, ¶ 11[3]) – sundried tomato, garden medley, original, chipotle black bean, and portobello burger ("Gardenburger products"). (Ex. B (Neely Depo.) at p. 19:2-21:11; Ex. D, Objections and Responses to Plaintiff's First Set of Special Interrogatories to Defendant ("Def's Rog Resp.") at p. 2-3.)

Following the acquisition of Gardenburger, in or around 2009, Kellogg added the "Made With Natural Ingredients" language to the Gardenburger products. (Ex. B (Neely Depo.) at p. 23:19-24:3.) This language remained on the Gardenburger products until after the filing of this lawsuit, in or around January, 2016, when Defendant removed the "Made With Natural Ingredients" language from all of the Gardenburger products ("Class period"). (*Id*. at p. 21:2-23:14, 28:10-23, 31:10-24.)

As such, common evidence shows Kellogg has used materially identical labels that uniformly bear the "Made With Natural Ingredients" claim on the Gardenburger products throughout the Class period. (*See* Ex. A ("Natural" Labels); Ex. B (Neely Depo) at p. 21:2-23:14, 28:10-23.)

> **B.** **Kellogg Has Used Common Non-Natural Ingredients in the Products Throughout the Class Period.**

Discovery confirms that throughout the Class period Kellogg has included soy lecithin and soy proteins (i.e. hexane processed soy ingredients) in its Gardenburger products. (Ex. D at p. 2-3 (Def's Rog Resp.).) Kellogg admits that the soy lecithin and soy protein ingredients in the Gardenburger products are created through a process in which whole soybeans are bathed in hexane to separate the soybeans' oil from protein, i.e. hexane processed soy ingredients (Ex.

---

[3] Unless otherwise noted, all "FAC" references are to Plaintiff's First Amended Complaint (Dkt. No. 1), attached as Exhibit H to the Smith Decl.

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

C. (Howenstine Depo.) at p. 49:13-51:14.); *see* Ex. F (Frozen Veggie Foods 2017 Strategies) at p. 2 ███████████████████████; (Ex. G (Frozen Veggie Foods 2016 Strategies) at p. 2 (███████████████████████████████ ████████████████████)). Defendant further concedes hexane is a constituent of gasoline obtained from crude oil, natural gas liquids, or petroleum refinery processing, and that hexane is a narcotic, which can cause irritation to the eyes, nose and upper respiratory tract, (Defendant's Answer to Plaintiff's FAC (Dkt. No. 36) ("Answer"), ¶ 10.) And, although the "Made With Natural Ingredients" language was removed from the Gardenburger products following the filing of this lawsuit, the ingredient composition of the Gardenburger products throughout the Class period has remained the same. (Ex. B (Neely Depo.) at p. 81:05-12; Ex. C (Howenstine Depo.) at p. 63:23-65:02.)

### C. Common Evidence Will Establish that the "Made With Natural Ingredients" Language is Deceptive to Reasonable Consumers.

Plaintiff will rely on class-wide evidence to show reasonable consumers were deceived by Defendant's conduct. First, Plaintiff will provide evidence that Kellogg's misrepresentations uniformly appear on all the Gardenburger products throughout the Class period. (Ex. B (Neely Depo.) at p. 81:05-12; Ex. C (Howenstine Depo.) at p. 63:23-65:02); *see Johns v. Bayer Corp.*, 280 F.R.D. 551, 558, n. 5 (S.D. Cal. Feb. 3, 2012)(where the alleged misrepresentations were made on the product labels, the court concluded "all class members necessarily saw Bayer's prostate claim.")

Next, consumer survey research performed by Plaintiff's expert Dr. Elizabeth Howlett, who is an extremely reputable and well-known scholar in the field of marketing research and consumer behavior, confirms that consumers overwhelmingly understand the "Made With Natural Ingredients" claim to signify the absence of synthetic and artificial ingredients. (Expert Report of Dr. Elizabeth Howlett ("Howlett Report"), ¶¶ 1-9, 28.)

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

Lastly, other available common evidence, including statements by the FDA, will establish that foods containing synthetic and artificial ingredients, such as hexane, are not "Made With Natural Ingredients." Although the FDA does not directly regulate the term "natural," the FDA has established a policy defining the outer boundaries of the use of the term by clarifying that a product is not natural if it contains color, artificial flavors, or synthetic substances. (FAC, ¶ 12.) Even Defendant concedes that hexane is a narcotic and constituent of gasoline obtained from crude oil, natural gas liquids, or petroleum refinery processing (Answer, ¶ 10), making it difficult to list soy proteins on the ingredients labels in "natural" products. (Ex. F (Frozen Veggie Foods 2017 Strategies) at p. 2 ██████

██████████████████; *see* (Ex. G (Frozen Veggie Foods 2016 Strategies) at p. 2 ██████████████████████████████████████████████

███████

### D. Common Evidence Shows that "Made With Natural Ingredients" Claims Are Material To Purchasers When Deciding to Purchase Gardenburger Products.

Clearly aware of the power of labeling on consumers, Kellogg admits "when you leverage the power of the Gardenburger brand and combine an "Made with Organic," "Natural" or "Made with Natural" description **You Can Charge More!**" (Ex. E ("The New Mainstream"), at p. 3 (emphasis original).) Kellogg further concedes in its marketing materials that such labeling allows for a higher premium of at least 17% - "Organic, all-natural, and locally sourced ingredients are priced higher and achieve a premium of at least 17%, driving more profits." (*Id.*). This is because Kellogg knows that labels are material to the Gardenburger consumer. (*Id.* stating "Gardenburger has the natural ingredients, real vegetables, and whole grain goodness vegetarians and other health-conscious consumers are looking for.")

Plaintiff's expert, Dr. Howlett, agrees. According to Dr. Howlett, Kellogg's "Made With Natural Ingredients" labeling claims are material and significantly affect consumers' decisions to purchase the Gardenburger products. (*See* Howlett Report ¶¶ 16, 17, 19-27).

Dr. Howlett is a Professor of Marketing, the author of numerous peer-reviewed publications, and an esteemed scholar in the field of marketing research and consumer behavior. (*See* Howlett Report ¶¶ 1-9.) Based upon a literature review, survey research, and her 25 years of experience in the field of marketing research and consumer behavior, Dr. Howlett concludes the "Made With Natural Ingredients" representation is "sufficiently important to affect a reasonable consumer's purchase decision." (*Id*. at ¶ 16); *see Kwikset Corp. v. Sup. Ct*., 51 Cal. 4th 310, 332-333 (2011) (stating, a misrepresentation "is material" if "'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action'" **or** "'the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.'").

As she discusses, the available literature shows that labels "serve as useful information tools for consumers in evaluating product attributes," and "that health and nutrient content claims presented on product labels impact a variety of consumer product attitudes, beliefs, and purchase intentions." (Howlett Decl. ¶¶ 21-22.) Consequently, "Made With Natural Ingredients" claims are significant drivers of perceived value, resulting in increased product preference and consumers' willingness to pay a price premium." (*Id*. ¶¶ 16-18.)

### E.    Plaintiff Purchased Gardenburger Products.

Kellogg's corporate representative testified that there were five flavors or "skus" in the Gardenburger product line during the Class period, all of which bore

the "Made With Natural Ingredients" label. (Ex. B (Neely Depo.), 19:2-23:14, 28:10-23; *see* Ex. A ("Natural" Labels).) Although Plaintiff may not have purchased each and every one of the flavors from the Gardenburger product line, her purchases are sufficiently similar to those of all other members of the Class, as Plaintiff regularly purchased at least three of the five flavors from the single Gardenburger product line (original, veggie medley and black bean flavors) during the Class period. (Declaration of Tasneem Mohamed ("Mohamed Decl."), ¶¶ 2, 3.)

It is generally well-accepted that a plaintiff may represent a class consisting of individuals who have purchased products in the same product line as the particular product he or she purchased. *See e.g, Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 571 (S.D. Cal. 2012)(certifying claims on class of purchasers of "electric heating pads bearing the words 'Kaz' and/or 'SoftHeat' and/or 'Smart/Heat' and/or 'Dunlap' and/or the number 1-800-477-0457"); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 380 (N.D. Cal. 2010)(certifying claims of a class of purchasers of "any beverage bearing the Blue Sky mark or brand"); *Astiana v. Dreyers Grand Ice Cream, Inc.*, No. C-11-2910 EMC, 2012 WL 2990766, *11 (N.D. Cal. July 20, 2012)(different flavors of ice cream); *Koh v. S.C. Johnson & Son, Inc.*, No. C-09-00927 RMW, 2010 WL 94265, *3 (N.D. Cal. Jan. 6, 2010)(different types of detergents).

Accordingly, common evidence shows Plaintiff's claims are sufficiently similar to all other members of the Class to support certification.

### F.    Class-wide Relief Can be Proved on a Common Basis.

Plaintiff is able to prove entitlement to relief on a common basis.  Like many other similar cases, Plaintiff can easily establish restitution (from data of average retail prices, numbers of units sold), restitutionary disgorgement of profits (from data on Defendant's sales and costs), and damages based on a price-

premium theory (from data of average retail prices) on a common basis for the Class.

Dr. Howlett proposes using conjoint analysis to quantify the percentage of the price premium for the "Made With Natural Ingredients" label on Gardenburgers on a classwide basis. Indeed, Dr. Howlett's methodology has been accepted by many courts in this same context. *See In re Conagra Foods, Inc.*, 90 F.Supp.3d 919, 954 (C.D. Cal. Feb 23, 2015), aff'd in part, rev'd in part on other grounds, 844 F.3d 1121 (9th Cir. 2017) (approving Dr. Howlett's conjoint analysis methodology to calculate the percentage of price premium attributable to natural labels in products containing GMOs); *Langan v. Johnson & Johnson Consumer Cos*., Case No. 3:13-cv-1470, 2017 U.S. Dist. LEXIS 35703, *13-15 (D. Conn., March 13, 2017) (approving Dr. Howlett's expert analysis at class cert in a consumer case involving "natural" claims on sunscreen and baby wash); *Dei Rossi v. Whirlpool Corp*., Case No. 2:12-cv-00125-TLN-CKD, 2015 U.S. Dist. LEXIS 55574, *5, n. 1 (E.D. Cal. April 28, 2015)(denying defendant's motion to strike Dr. Howlett's expert report at class cert in a consumer case involving mislabeled refrigerators).

Given the nature of the claims and the widespread acceptance and reliability of the damages methodologies proposed by Plaintiff's expert, damages in this case will be able to be computed and proven on a class-wide basis.

## III.  THE REQUIREMENTS FOR CERFTICATION PURSUANT TO FED. R. CIV. P. 23(a) AND 23(b)(3) ARE MET

### A.  Standard.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal–Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011). To qualify, the party seeking class certification must provide facts sufficient to satisfy the requirements of

Federal Rules of Civil Procedure 23(a) and (b). *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Fed. R. Civ. P. 23(a) requires Plaintiff to demonstrate: (1) numerosity; (2) commonality of the factual and legal issues; (3) typicality of Plaintiffs claims and defenses to those of the class; and (4) adequacy of Plaintiffs and their counsel. Fed.R.Civ.P. 23(b)(3) requires that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

The district court must conduct a rigorous analysis to determine whether Rule 23 has been satisfied. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). It is a well-recognized precept that "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action,'" *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978)(quotation citation omitted), and a court must consider the merits if they overlap with the Rule 23 requirements. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). However, "it is improper to advance a decision on the merits to the class certification stage," *Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir. 1983)(citation omitted); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974), and a court's review of the merits should be limited to those aspects relevant to making the certification decision on an informed basis. Fed.R.Civ.P. 23 advisory notes.

## B.     Plaintiff Has Standing and the Proposed Class is Ascertainable.

There are threshold requirements that the named plaintiff has standing and that the class is ascertainable. *See Zeisel v. Diamond Foods, Inc.*, No. C 10-01192 JSW, 2011 WL 2221113, at *3, 7 (N.D. Cal. June 7, 2011). Both of these requirements are met here.

### 1.   Plaintiff Has Standing.

Plaintiff purchased Gardenburger products because she believed them to be made with natural ingredients and knowingly paid more for them because of this representation. (FAC, ¶4; Mohamed Decl., ¶ 4.) Accordingly, Plaintiff has standing. *See Kwikset*, 51 Cal. 4th at 330 (consumers have standing to sue under the FAL and CLRA based on deceptive made in the USA labels when they allege that they would not have purchased a product or would have paid less for a product if it were not for the alleged deceptive advertising); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013)(applying *Kwikset* to hold that when a consumer purchases merchandise on the basis of false information and when he alleges that he would not have made the purchase but for the misrepresentation, he has standing).

### 2.   The Class is Ascertainable.

The proposed Class is also ascertainable. An identifiable class exists if its members can be ascertained by reference to objective criteria. *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679–80 (S.D.Cal.1999). In the Ninth Circuit, there is no requirement at class certification to show an administratively feasible way to identify class members as a prerequisite to certification. *Briseno v. Conagra Foods, Inc.*, 844 F.3d 1121, 1125-26 (9th Cir. 2017)("Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.") Here, Class members can be identified based on objective criteria, such as the product they purchased, the date of the purchase, and the location of the purchase. Thus, the Class is ascertainable.

### C.   The Rule 23(a) Requirements Are Satisfied.

### 1.   Rule 23(a)(1) – Numerosity.

Rule 23(a)(1) requires the class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "Impracticability does not

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

mean impossibility," rather the inquiry focuses on the difficulty or inconvenience of joining all members of the class. *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913–914 (9th Cir.1964). In determining whether numerosity is satisfied, the Court may consider reasonable inferences drawn from the facts before it. *Gay v. Waiters' & Dairy Lunchmen's Union*, 549 F.2d 1330, 1332 n. 5 (9th Cir. 1977).

Here, at minimum, the Class consists of thousands of consumers. Indeed, Defendant "admits that thousands of consumers purchased the products at issue in this case," (Answer, ¶ 22) and that gross sales in California from September, 2010 to September, 2014 totals approximately $5,997,587 (Notice of Removal to Federal Court Pursuant to 28 U.S.C. §§ 1332(a), 1332(d), 1441 (Dkt. No. 1) ("Removal"), ¶ 17). Defendant further admits that '[t]here can be no doubt that the number of California residents who purchases Gardenburger products in California exceeds 100." (Removal, ¶ 24.)

While the exact number of consumers is not currently knowable, the threshold minimum for establishing numerosity under Rule 23(a)(1) is clearly satisfied. *See*, *e.g.*, *Beck-Ellman*, 283 F.R.D. at 564 (inferring numerosity based upon allegation of sale of 5 million heating pads over 8-year period); *Chavez*, 268 F.R.D. at 377 (inferring numerosity based on "allegation that Blue Sky sold over $20 million of product").

### 2. Rule 23(a)(3) – Typicality.

Rule 23(a)(3) requires the representative party to have claims that are "typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010)(citations omitted). The typicality requirement is "permissive and requires only that the representative's claims are reasonably coextensive with those of the

absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). However, "[c]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)(citations omitted).

In this case, Plaintiff's claims are typical. Plaintiff and the Class members' claims, each arise from the same course of events – their purchases of the Gardenburger products labeled "Made With Natural Ingredients" that contained unnatural or artificial substances. (FAC, ¶ 24.) Plaintiff and Class members were also each exposed to the identical alleged misrepresentations on the packages, (*see* Ex. A ("Natural" Labels)), and thus share the same interests in determining whether the Gardenburger products were deceptively labeled. *See, e.g., Beck-Ellman*, 283 F.R.D. at 565; *Johns*, 280 F.R.D. at 557. In addition, Plaintiff's claims are typical of Class members' claims based upon purchases of food products within the same product category. Specifically, as discussed above, Plaintiff regularly purchased original, veggie medley and black bean flavors from the Gardenburger product line. (Mohamed Decl., ¶ 3.)

As this Court recognized in *Beck-Ellman*, a plaintiff who purchases products within the same product line with the same labeling omissions (or claims) is "sufficiently similar" to, and can represent, all other class members within that product line. 283 F.R.D. at 566 (certifying claims on behalf of all models in "heating pad" product line where all "heating pads contain similar omission[s]"); *see also Chavez*, 268 F.R.D. at 378 (certifying claims; stating "Although plaintiff did not purchase each type of beverage carrying the misleading label, his claims are 'reasonably coextensive with those of absent members.'") (citation omitted). As in *Beck-Ellman* and *Chavez*, Plaintiff's claims cover the same product line, bear materially identical misrepresentations, and, therefore, have claims that are "sufficiently similar" to those of all other class

members.[4]

In sum, Plaintiff's claims arise from the same course of events, share the same legal theory, and are "reasonably coextensive" of the claims of the Class. Thus, the typicality requirement is satisfied here.

### 3.    Rule 23(a)(4) – Adequacy of Representation.

Rule 23(a) also requires the representative parties to "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The Ninth Circuit set a two-prong test for this requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003)(citing *Hanlon*, 150 F.3d at 1020).

Here, Plaintiff is an adequate representative because she is a member of the Class she seeks to represent, shares the same claims and interest in obtaining relief as all other class members, and has no conflicts of interests with other Class members. *Beck-Ellman*, 283 F.R.D. at 567; *In re Ferrero Litig*., 278 F.R.D. 552 (S.D. Cal. 2011); *see Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, n. 13 (1982)(noting that where the claims of the class and class representatives are coextensive, there is no conflict). Plaintiff has also demonstrated her adequacy through her participation thus far in this litigation. (*See* Smith Decl., ¶ 8.)

In addition, for the reasons stated in the Smith Declaration, Plaintiff's

---

[4] Moreover, facts surrounding an individual class member's experiences with the product is irrelevant because under the objective test(s) of the UCL, FAL and CLRA, injury is shown where the consumer has purchased a product that is marketed with a material misrepresentation; that is, in a manner such that members of the public are likely to be deceived. *In re Tobacco II cases*, 46 Cal. 4th 298, 311-312 (2009).

counsel is adequate and should be appointed as Class Counsel. (Smith Decl., ¶¶ 4-7, 9); *see In re Emulex Corp*., 210 F.R.D. 717, 720 (C.D. Cal. 2002)(In evaluating the adequacy of counsel, "a court may examine the attorneys' professional qualifications, skill, experience, and resources. The court may also look at the attorneys' demonstrated performance in the suit itself.").

Respectfully, Plaintiff and her counsel are adequate.

### D.     Rule 23 (a)(2) Commonality/Rule 23(b)(3) Predominance.[5]

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc.*, 131 S. Ct. at 2551. This requires that the "claims must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. Commonality is satisfied by "existence of shared legal issues with divergent factual predicates" or a "common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019–20. All questions of fact and law need not be common to satisfy the rule. *Rodriguez*, 591 F.3d at 1122.

To satisfy predominance, it is not enough to establish that common questions of law or fact exist. "Rule 23(b)(3) focuses on the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022. Class certification under Rule 23(b)(3) is proper when common questions present a significant portion of the case and can be resolved for all class members in a single adjudication. *Id*. The predominance test is more rigorous as it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by

---

[5] Post *Wal-Mart Stores, Inc.*, the commonality and predominance requirements have effectively merged, so Plaintiff addresses them together.

representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-624 (1997). Despite the enhanced rigor, the Supreme Court noted "[p]redominance is a test readily met in certain cases alleging consumer…fraud." *Id*. at 625.

### 1. Common Questions Exist for Plaintiff and the Class.

The central and predominant question of all of Plaintiff's claims is whether Kellogg's representations are deceptive, unlawful and/or unfair. *See Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (holding that "the primary evidence in a false advertising case is the advertising itself") (citation omitted). This determination is not made with regard to each class member, but under a single, objective, and common "reasonable consumer" standard. *Id*. "This objective test renders claims under the UCL, FAL, and CLRA ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 480 (C.D. Cal. 2012)(internal citations and quotations omitted). Plaintiff's claim for breach of warranty is also suitable for class adjudication as it is based on the same facts as the statutory claims.

In a consumer fraud case, "when plaintiffs are exposed to a common advertising campaign, common issues predominate." *Johns*, 280 F.R.D. at 558 (certifying a class where subject statement made on the product's packaging). Here, Plaintiff's and Class members' claims depend on common factual and legal contentions the determination of which will resolve issues that are central to the validity of their claims in a single stroke. *Wal–Mart Stores, Inc*., 131 S. Ct. at 2551. Such common questions include: (1) whether Defendant labeled the Gardenburger products "Made With Natural Ingredients"; (2) whether the Gardenburger products were "Made With Natural Ingredients"; (3) whether Gardenburger's "Made With Natural Ingredients" labeling is and was likely to deceive class members or the general public; and (4) the appropriate measure of restitutionary disgorgement and/or restitution. (FAC, ¶ 23.)

These common contentions satisfy Fed.R.Civ.P. 23(a)(2) and, as discussed below, predominate over any individual issues, as recent certifications of similar labeling misrepresentation claims by this district and other district courts confirm. *See e.g., Astiana v. Kashi Co.,* 291 FRD 493, 509 (S.D. Cal. July 30, 2013) (certifying class for products labeled "all natural" but containing hexane processed soy ingredients); *Brazil v. Dole Packaged Foods*, LLC, No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, at *70 (N.D. Cal. May 30, 2014) (certifying Rule 23(b)(2) and (b)(3) classes challenging "All Natural" representations on label); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *95 (N.D. Cal. May 23, 2014)(certifying class under Rule 23(b)(3) based on "All Natural" statement on label); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011) (certifying a class based on representation about "probiotic" bacteria made on yogurt container label).

### 2. Common Questions of Law Predominate as to Plaintiff's Consumer Protection Claims.

Plaintiff asserts causes of action under the UCL, the FAL, and the CLRA on behalf of herself and the Class. (FAC ¶¶ 1, 3, 28-60.) Each of Plaintiff's statutory causes of action lends itself to proof by common inquiry and therefore satisfies the predominance requirement set forth by Fed.R.Civ.P. 23(b)(3).

Plaintiff asserts claims on her own behalf and on behalf of the Class under the "unlawful" prong of the UCL. (FAC ¶¶ 30-32.) Unlawful business acts include "any practices forbidden by law." *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 880 (1999). As discussed above, Plaintiff will be able to establish through common evidence that Defendant's "Made With Natural Ingredients" claims are false and misleading to consumers. (*See* Sections II.A-F, *supra*.) Since federal and state law identically prohibit false and misleading labeling of food (*see* Cal. Health & Safety Code §§ 110660, 110100(a); 21 U.S.C. § 343(a)(1)), Defendant's false and misleading labeling

gives rise to UCL unlawful claims on behalf of each of the Class. *South Bay*, 72 Cal. App. 4th at 861, 880 ("section 17200 'borrows' violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq."). Notably, the proof needed to establish these violations is not based on any individualized factor and is common across the Class.

Plaintiff asserts claims on her own behalf and on behalf of the Class under the "unfair" prong of the UCL. (FAC, ¶¶ 33-34.) Under this prong, the Court must examine the impact of Defendant's practice "on its alleged victims, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim...." *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (1980); *Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal. App. 4th 1388, 1425 n. 15 (2002) (same). Here again, this is an inquiry that is common to all members of the Class. Defendant's motivation – increased sales and market share – is not unique to any Plaintiff or any member of the Class. Similarly, the harm to Plaintiff resulting from the purchase of the Gardenburger products is no different than the harm to any of those she seeks to represent.

Plaintiff also asserts claims on her own behalf and on behalf of the Class under the "fraud" prong of the UCL and the FAL. (FAC, ¶¶ 35-36, 40-45.) For these claims, Plaintiff must demonstrate her individual reliance on Defendant's "Made With Natural Ingredients" representations resulted in injury in fact, *In re Tobacco II Cases*, 46 Cal. 4th 298, 325-27 (Cal. 2009), and show that "members of the public are likely to be deceived" by Defendant's misrepresentations. *Williams*, 523 F.3d at 938.

For Class members, however, relief "is available without individualized proof of deception, reliance and injury." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011) (citing *Tobacco II*, 46 Cal 4th at 320). Plaintiff can prove individual injury and reliance, (*see* Mohamed Decl. ¶¶ 4-6; FAC ¶ 4), and,

as discussed, all other elements may be proved on a common basis.

Finally, Plaintiff asserts claims on her own behalf and on behalf of the Class under the CLRA (FAC ¶¶ 46-54), which are likewise subject to proof by common evidence. The CLRA makes it unlawful to use "unfair methods of competition and unfair or deceptive acts or practices" in the sale of goods or services to a consumer. Cal. Civ. Code § 1770. For the same reasons as above, the proof of whether the "Made With Natural Ingredients" claims on Defendant's packaging were unlawful or deceptive will be common to the Class. Moreover, while reliance is an element of a CLRA claim, it may be inferred as to the entire class if the representations were objectively material. *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010); *Mass. Mut. Life Ins. Co v. Sup. Ct.*, 97 Cal. App. 4th 1282, 1293 (2002). As stated above, Defendant's representations regarding "natural ingredients" on the Gardenburger products are material to consumers. (*See* Section II.D, *supra*; Ex. A ("Natural" labels)); *Kwikset*, 51 Cal. 4th at 332- 333 (defining materiality).

### 3. Common Questions of Law Predominate as to Plaintiff's Breach of Express Warranty Claim.

Plaintiff asserts a cause of action for breach of express warranty on behalf of herself and the Class (FAC, ¶¶ 55-60). Like Plaintiff's consumer protection claims, common questions of law predominate on these claims, satisfying Rule 23(b)(3).

Plaintiff brings her claim for breach of express warranty pursuant to Cal. Com. Code § 2313, which requires proof of an "affirmation of fact or promise" or "description of goods," which was "part of the basis of the bargain," and breach. *See Weinstat v. Dentsply Int'l*, 180 Cal. App. 4th 1213, 1227 (2010) (reversing order decertifying breach of express warranty class). As stated above, these elements can be proved from common evidence that the "Made With Natural Ingredients" representations were made on the labels, the Gardenburger products

contained ingredients that were not natural and/or artificial, and such representations were material. *See Yamada v. Nobel Biocare Holding AG*, 275 F.R.D. 573, 576, 581(C.D. Cal., 2011) (certifying breach of express warranty claim).

### 4.    Common Evidence Will Prove Plaintiff's Remedies.

In *Comcast Corp. v. Behrend*, the United States Supreme Court held that, in order to meet the predominance prong for class certification, a plaintiff must establish that "damages are capable of measurement on a classwide basis." 133 S. Ct. 1426, 1433 (2013). The Court stated that "[c]alculations need not be exact, but at the class-certification stage (as at trial), any model supporting a 'plaintiff's damages case must be consistent with its liability case . . .'" *Id*. at 1433.

Despite *Comcast*, the Ninth Circuit recently reaffirmed the long-standing rule that individual damage calculations alone cannot defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc*., 824 F.3d 1150, 1154 (9th Cir. 2016); *Pulaski & Middlman, LLC v. Google, Inc*., 802 F.3d 979, 986 (9th Cir. 2015), *quoting Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 513 (9th Cir. 2013) ("damages calculations alone cannot defeat certification, even if individual issues predominate.").

### a.    Restitution.

Plaintiff can recover restitution under their CLRA, UCL, and FAL claims. The UCL, FAL, and CLRA "authorize a trial court to grant restitution to private litigants asserting claims under those statutes[,]" and courts treat the restitution remedies provided under all three statutes similarly. *See Colgan v. Leatherman Tool Group, Inc*., 135 Cal. App. 4th 663, 694 (2006).

To satisfy Rule 23(b)(3)'s predominance requirement, a plaintiff need only present a method of calculating damages that is consistent with their theory of liability. *See Chavez*, 268 F.R.D. at 379 ("At class certification, plaintiff must

present a likely method for determining class damages, though it is not necessary to show that his method will work with certainty at this time.") (internal quotation marks and citations omitted).

Plaintiff's theory of liability and damages is that consumers paid excess money for Gardenburger products under the mistaken belief that they were made with natural ingredients. (*See* Ex. E ("The New Mainstream"), at p. 3 (stating "when you leverage the power of the Gardenburger brand and combine an "Made with Organic," "Natural" or "Made with Natural" description **You Can Charge More!**" (emphasis original); "Organic, all-natural, and locally sourced ingredients are priced higher and achieve a premium of at least 17%, driving more profits;" "Gardenburger has the natural ingredients, real vegetables, and whole grain goodness vegetarians and other health-conscious consumers are looking for").) Thus, the damages at issue are the monies paid by consumers for Gardenburger products that would not have been paid but for Gardenburger's misrepresentation.

Accordingly, there are two calculations that are relevant: (1) the amount of money consumers overpaid for Gardenburger products because of the misrepresentation, i.e., the price premium; and (2) how many Gardenburger products were sold in California during the class period. *See Kwikset*, 51 Cal.4th at 330 (holding "because of the misrepresentation the consumer (allegedly) was made to part with more money than he or she otherwise would have been willing to expend . . . [t]hat increment, the extra money paid, is economic injury and affords the consumer standing"); *Astiana v. Ben & Jerry's Homemade, Inc*., No. C 10-4387 PJH, 2014 WL 60097 at *12 (N.D. Cal. Jan. 7, 2014) ("One method of quantifying the amount of restitution to be awarded is computing the effect of unlawful conduct on the market price of a product purchased by the class…. Restitution can then be calculated by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices." (Internal citations

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

omitted.)

The Ninth Circuit recently held that the price premium method is the preferred method for calculating restitution in a consumer product false advertising class action. *See Briseno v. Conagra Foods, Inc.*, 674 Fed. Appx. 654, 657 (9th Cir. 2017) (plaintiff's damages model, which would measure the classwide price premium that class members paid based on the alleged false representation, was sufficient to support class certification under Comcast); *Brazil v. Dole Packaged Foods, LLC*, 660 Fed. Appx. 531, 534-35 (9th Cir. 2016) (proper measure of damages in consumer product false advertising class action is "the difference between the prices customers paid and the value of the fruit they bought – in other words, the 'price premium' attributable to Dole's 'All Natural Fruit' labels.").

To measure the price premium that resulted from Gardenburger's claims, Plaintiff's expert, Dr. Howlett, proposes using conjoint analysis. (Howlett Report, ¶ 30.) Conjoint analysis is a widely used and accepted form of quantitative consumer preference measurement, often used in marketing research to determine how much each feature of a product contributes to overall preferences. (*Id.*) Here, "Made With Natural Ingredients" is a feature Gardenburger products claimed to have. Just as conjoint analysis can be used to determine the importance of "calories" in consumers' overall preference for a food product, conjoint analysis can be used to determine the importance of the claim "Made With Natural Ingredients" in consumers' overall preference for Gardenburgers. (*Id.* at ¶33); *See supra, In re Conagra Foods, Inc.*, 90 F.Supp.3d at 954 (approving Dr. Howlett's conjoint analysis methodology); *Langan*, 2017 U.S. Dist. LEXIS 35703, *13-15 (approving Dr. Howlett's expert analysis at class cert); *Dei Rossi*, 2015 U.S. Dist. LEXIS 55574, *5 (denying defendant's motion to strike Dr. Howlett's expert report at class cert).

Since Plaintiff proffers a scientifically-valid method for ascertaining

damages that comports with Plaintiff's theories of liability, Plaintiff has satisfied *Comcast* because there is a valid method for ascertaining damages on a classwide basis. Each class member paid more for the Gardenburger product because of the "Made With Natural Ingredients" representation. From this, damages can be measured by applying the analytical methodology proffered by Dr. Howlett, i.e., the choice model theory using marketplace and conjoint experiment datasets. This dollar amount can then be multiplied by the number of units purchased by the Class (or each class member) to determine both total and individual damages.

### b. Statutory and Punitive Damages.

Under the CLRA, in addition to restitution, Plaintiff can recover actual damages, punitive damages, injunctive relief, and attorneys' fees and costs. *See Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1110 (N.D. Cal. 2010). The CLRA provides that a consumer may recover "[a]ctual damages, but in no case shall the total award of damages in a class action be less than one thousand dollars ($1,000)." Cal. Bus. & Prof. Code § 1780(a)(1). Because of this statutory minimum, the Court may award at least $1,000 if the class is certified.

Plaintiff may also recover punitive damages under the CLRA. Civ. Code § 1780. An award of punitive damages under the CLRA does not require any individualized inquiries because each Class member would receive a pro rata share of the award. There can be no dispute that questions relating to Defendant's knowledge of its own scheme and/or purposeful wrongdoing, which are needed to secure punitive damages for Plaintiff's CLRA claims, raise exclusively common issues. *See Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 238 (C.D. Cal. 2003) (denying argument in a RICO context that the defendant's intent raised individual questions and noting "no case law points to such a proposition"); *see also* Newberg on Class Actions § 17:39 (4th ed.) ("punitive damages issues easily qualify as common issues for class action treatment in a Rule 23(b)(3) voluntary class [because] common questions associated with punitive awards will satisfy the

common questions requirement for class actions").

The determination of relief does not usually defeat predominance, and it does not do so here, as damages are capable of measurement on a class basis from Defendant's records of sales, profits, and prices. (*See* Section II.F); *Johns*, 280 F.R.D. at 559 ("amount of damages…does not defeat class action certification") (citing *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975)); *Guido v. L'Oreal, USA, Inc*., 284 F.R.D. 468, 479 (C.D. Cal. 2012) (finding price premium damages susceptible of class-wide treatment); *cf. Comcast*, 133 S. Ct. at 1432 (finding individual questions predominated where plaintiffs could not show anti-trust injury was capable of measurement).

In sum, questions capable of determination on a class basis predominate and will drive resolution of Plaintiff's and all Class members' claims in this action.

### E.    Rule 23(b)(3) – Superiority.

Rule 23(b)(3) also requires that the Court determine whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," based upon the following nonexclusive factors:

> (A) the interest of members of the class in individually controlling the prosecution. . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by. . . members of the class; (C) the desirability. . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b). These factors reflect the appropriateness of class certification here.

### 1.    Rule 23(b)(3)(A).

The first factor (the interest of each class member in controlling the prosecution of separate actions) supports the superiority of a class action in the underlying matter. In a case with thousands of Class members (or more), each

Class member's interest in aggregating claims into a single class action lawsuit substantially outweighs the interest of any Class member in individual control of the litigation. *See*, *e.g.*, *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("The more claimants there are, the more likely a class action is to yield substantial economies in litigation"). Further, Class members' individual claims here will be relatively small, making individual litigation impracticable. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985) ("[M]ost of the plaintiffs would have no realistic day in court if a class action were not available."); *In re Worldcom Inc. Sec. Litig.*, 219 F.R.D. 267, 304 (S.D.N.Y. 2003) ("Few individuals could even contemplate proceeding with this litigation in any context other than through their participation in a class action, given the expense and burden that such litigation would entail").

### 2.    Rule 23(b)(3)(B).

Plaintiff's counsel is not aware of any pending litigation in which the claims at issue in this case are being separately pursued by any individual putative class members. Thus, the second factor (the extent and nature of any litigation concerning the controversy already commenced by members of the class) also supports a finding of superiority. *West v. Circle K Stores, Inc.*, Case No. CIV. S-04-0438 WBS GGH, 2006 WL 1652598, at *8 (E.D. Cal. June 12, 2006) ("In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action. . . ").

### 3.    Rule 23(b)(3)(C).

Analysis of the desirability of concentrating the litigation of the claims in the particular forum also confirms that class treatment is a superior means of adjudicating these claims. Specifically, since the Class is limited to California (FAC, ¶¶ 1, 20, 22), concentrating the litigation in this forum is appropriate.

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification

### 4. Rule 23(b)(3)(D).

Analysis of the fourth factor (difficulties likely to be found in the management of a class action) further confirms the superiority of the class mechanism here.

Quite simply, there is no reason to believe that the prosecution of the claims of the putative class members in a single class action will create more management problems than the alternative (i.e., the prosecution of thousands of separate lawsuits by individual class members). (*See* Sections II.A-F (showing common proof)). In fact, it would be more burdensome on the courts, parties and judicial system to entertain a multiplicity of lawsuits regarding Defendant's common conduct and, in the absence of a class action, thousands of consumers would also have no reasonable means of enforcing their rights. *Carnegie*, 376 F.3d at 661 ("[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative. . . to no litigation at all."); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974) (in deciding the "best" method, court may consider "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually."); *Jordan v. Paul Financial, LLC*, 285 F.R.D. 435, 467 (N.D. Cal. 2012) (noting failure to certify due to unmanageability is disfavored).

Accordingly, prosecuting the case at bar as a class action does not present any difficulties within the meaning of Rule 23(b)(3)(D), and the class mechanism is clearly the superior vehicle by which to adjudicate this controversy.

///

///

///

## IV.    CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests the Court certify this case as a class action, appoint her as class representative, and appoint Plaintiff's counsel as Class Counsel, as indicated in the attached proposed order.


Dated:  July 9, 2018                                    AEGIS LAW FIRM, P.C.

                                                        *s/ Samantha A. Smith*
                                                        By:  Samantha A. Smith
                                                        Attorneys for Plaintiff Tasneem L.
                                                        Mohamed
                                                        Email:  ssmith@aegislawfirm.com

Memorandum of Points and Authorities ISO Plaintiff's Motion for Class Certification