**AEGIS LAW FIRM, P.C.**
Samuel A. Wong (State Bar No. 217104)
Kashif Haque (State Bar No. 218672)
Samantha A. Smith (State Bar No. 233331)
Jessica L. Campbell (State Bar No. 280626)
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: 949-379-6250
Facsimile: 949-379-6251

Attorneys for Plaintiff Tasneem L. Mohamed

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASNEEM L. MOHAMED, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KELLOGG COMPANY and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 14-cv-02449-L-MDD<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Submitted on the Briefs<br>Judge: Hon. M. James Lorenz<br>Ctrm.: 5B (5th Floor – Schwartz)<br><br>[NO ORAL ARGUMENT, UNLESS REQUESTED BY THE COURT] |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................. 1

II. ARGUMENT........................................................................................ 1

    A. Dr. Howlett's Damages Proposal is Sufficient for Class Certification Purposes........................................................................ 1

    B. Common Issues Predominate Over Individual Issues........................ 4

        1. Whether "Made With Natural Ingredients" is Deceptive is a Common Question........................................................................ 4

        2. Consumer Perception and Reliance is a Merits Based Analysis Not Appropriate at Class Certification............................................... 6

    C. Plaintiff is Both Adequate and Typical............................................... 8

III. CONCLUSION................................................................................... 10

Plaintiff, on behalf of herself, and other similarly-situated California consumers, submits this Reply in Support of Plaintiff's Motion for Class Certification.[1]

## I. INTRODUCTION

Defendant Kellogg Company's ("Defendant") opposes Plaintiff's Motion for Class Certification on three grounds: (1) Plaintiff's expert, Dr. Elizabeth Howlett, did not present an adequate damages model; (2) individual issues predominate over common ones; and (3) Plaintiff is neither adequate or typical because she did not rely on the "Made with natural ingredients" language.

As shown below, Dr. Howlett's proposed methodology of using conjoint analysis is an accepted method for calculating restitution in this case, and any alleged individual issues are capable of resolution on a classwide basis. Lastly, Plaintiff is neither inadequate nor atypical as she relied on Defendant's misrepresentations and purchased Gardenburgers during the class period. As such, this Court should grant Plaintiff's Motion.

## II. ARGUMENT

### A. Dr. Howlett's Damages Proposal is Sufficient for Class Certification Purposes.

The Ninth Circuit recently held in *Briseno v. ConAgra Foods, Inc.*, 674 Fed. Appx. 654, 657 (9th Cir. 2017), that plaintiffs' *proposed* damages model was sufficient to support class certification under *Comcast*. In *Briseno*, defendant ConAgra similarly argued that plaintiffs did not proffer a sufficient method for calculating classwide damages under *Comcast*. *Id.* at 657. There, as here, plaintiffs proposed a model to calculate price premium using conjoint analysis to segregate the portion of the premium attributable to consumer understanding of the label. *Id.* The Court held that since "[p]laintiffs' proffered model tracked their theory of

---

[1] "Motion" refers to Plaintiff's Motion for Class Certification.

liability...[it] was sufficient to survive class certification." *Id.*[2]

Here, as is the case for many consumer food cases, Dr. Howlett explains that conjoint analysis and choice-based conjoint can be used to determine the price premium of the claim "Made With Natural Ingredients" in consumers' overall preference for Gardenburgers. (Motion, Howlett Report at ¶33). In the Ninth Circuit, the price premium method discussed by Dr. Howlett is an accepted method for calculating restitution in a consumer product false advertising class action. *Briseno*, 674 Fed. Appx. at 657. In *In re ConAgra*, the court addressed similar criticisms of Dr. Howlett's damages methodology and rejected it, holding that Dr. Howlett's damages methodology was sufficient to permit certification under *Comcast*. *Id.* at 954. Indeed, in *In re NJOY Consumer Class Action Litig.*, a case relied upon by Defendant, the court (like many other courts) agreed that Dr. Howlett's "use of conjoint analysis ...was sufficient to permit certification under *Comcast*." 120 F. Supp. 3d 1050, 1121 (C.D. Cal. 2015); *see Langan v. Johnson & Johnson Consumer Cos.*, No. 3:13-cv-1470, 2017 U.S. Dist. LEXIS 35703, *13-15 (Conn. March 13. 2017)(approving Dr. Howlett's expert analysis at class cert); *Dei Rossi v. Whirlpool Corp.*, No. 2:12-cv-00125, 2015 U.S. Dist. LEXIS 55574, *5 (E.D. Cal. April 28, 2015)(denying defendant's motion to strike Dr. Howlett's expert report at class cert).[3]

---

[2] Defendant's citation to one of the lower court's prior companion opinions on the *ConAgra* matter is misleading. In a subsequent opinion, the court specifically analyzed Dr. Howlett's damages proposal and held that it satisfied *Comcast*. *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1026 (C.D. Cal. 2015).

[3] The cases cited by Defendant in support of its argument are distinguishable. *See e.g. Apple, Inc. v. Samsung Elecs. Co.*, No. 11-01846, 2014 U.S. Dist. LEXIS 29721, at *80 (N.D. Cal. March 6, 2014)(a patent infringement where the survey failed to account of actual market price); *Saavedra v. Eli Lilly & Co.*, No. 12-9366, 2014 U.S. Dist. LEXIS 179088, at *12-21 (C.D. Cal. Dec. 18, 2014)(a false advertising case based on the prescription drug market, which is difficult market to measure as it is
(Continued...)

Since Plaintiff proffers a scientifically-valid method for ascertaining damages on a classwide basis that comports with Plaintiff's theories of liability, Plaintiff has satisfied *Comcast*. See *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-34 (2013). Each class member paid more for the Gardenburger product because of the "Made With Natural Ingredients" representation. From this, damages can be measured by applying the analytical methodology proffered by Dr. Howlett. This dollar amount can then be multiplied by the number of units purchased by the Class (or each class member) to determine both total and individual damages.

Finally, Defendant is wrong in urging the strict application of *Daubert* and FRE 702 at class certification. As explained in the Manual for Complex Litigation (4th):

> The judge need not decide at the certification stage whether such expert testimony satisfies standards for admissibility at trial. Courts have applied a high threshold for assessing the need for expert testimony at the class certification stage. A judge should not be drawn prematurely into a battle of competing experts.

*Id.*, at 267-68 (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124 (2d Cir. 2001)). Like other courts that have considered similar issues, this Court should reject Defendant's *Daubert* challenge.

While Defendant points out that this Court recently struck part of Dr. Howlett's opinion in *Clay v. Cytosport*, the Court only excluded Dr. Howlett's opinion as to the CLRA claim as it pertained to the L-glutamine representations because the documents relied upon did not address L-glutamine. No. 15-000165, 2018 U.S. Dist. LEXIS 153124, at *21 (S.D. Cal. Sept. 7, 2018). While the Court

---

not an efficiently functioning); *Werdebaugh v. Blue Diamond Growers*, Case No. 12-cv-02724, 2014 U.S. Dist. LEXIS 173789, *36-39 (N.D. Cal. Dec. 15, 2014)(the expert conducted a study that *omitted* the brand variable from his regression analysis, meaning the damages captured both the price premium attributable to both the brand *and* the labeling claim).

struck Dr. Howlett's testimony as to this limited scope, it ultimately approved her proposed conjoint analysis model. *Id.* at *36 (stating "Dr. Howlett's proposed conjoint analysis…is sufficient to meet Plaintiffs' burden to show that damages can be calculated on a class-wide basis…") Since Dr. Howlett reviewed documents directly related to Gardenburger labeling, there is no reason for a similar limitation here.

Moreover, as discussed below, materiality of the misrepresentations is shown through Defendant's marketing materials.

### B. Common Issues Predominate Over Individual Issues.

Defendant argues that individual issues predominate because consumers' opinions on the definition of the term "natural" may vary and consumers may buy Gardenburgers for different reasons. As shown below, Defendant's fact-based arguments do nothing more than present further evidence that Defendant's alleged individual issues are capable of resolution on a classwide basis.

#### 1. Whether "Made With Natural Ingredients" is Deceptive is a Common Question.

Whether the phrase "Made With Natural Ingredients" is deceptive is a common question of fact. Indeed, this Court already considered and rejected Defendant's argument that the phrase "Made With Natural Ingredients" is *not* deceptive in its ruling on Defendant's Motion for Judgment on the Pleadings ("JOP"), holding: "Kellogg's claims that Gardenburgers are 'Made With Natural Ingredients' could be interpreted by consumers as a claim that all the ingredients in the product were natural, which is allegedly false. Moreover, customers could interpret the term 'Made With Natural Ingredients' as a claim that Gardenburgers are processed with only natural ingredients." (Order Granting in Part and Denying in Part JOP ("JOP Order," Dkt No. 35), p. 5.) As previously stated by this Court, the "question is not whether [Ms. Mohamed] provides a plausible definition for ["natural"], but whether a reasonable consumer would expect to find [Hexane] in [Gardenburgers] that are

labeled ["Made With Natural Ingredients"]." *Id.* citing *Ham v. Hain Celestial Group Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014).

The cases cited by Defendant in support of this argument are distinguishable. For example, in *Pelayo v. Nestle USA, Inc.*, the plaintiff provided several conflicting definitions of the term "natural" in her complaint. 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013). That is not the case, here, where Plaintiff has simply pled "a product is <u>not</u> natural if it contains color, artificial flavors, or synthetic substances." (FAC ¶12.)[4] *Kelly v. Cape Cod Potato Chip Co.*, a case out of the Western District of Missouri with little precedential value, followed *Pelayo*, and held that plaintiff could not meet her own definition of natural, which was "existing or produced by nature: not artificial." 81 F. Supp. 3d 754, 760 (W.D. Mo. 2015). In the *Jones v. ConAgra*, the label statements varied by can size, variety, and time. No. 12-01633, 2014 U.S. Dist. LEXIS 81292, at *54 (N.D. Cal. June 13, 2014). Likewise, in *Randolph v. J.M. Smucker Co.*, a case out of Southern District of Florida, the "majority of Defendant's products did not bear the challenged labeling" and the "class include[d] products which did not contain the alleged misrepresentation during the entire class period." 303 F.R.D. 679, 695-96 (S.D. Fla. 2014). Moreover, *Briseno* does not require that plaintiffs actually conduct a consumer survey when moving for class certification. Rather, *Briseno* made it clear that plaintiffs' *proposal* to measure the classwide price premium attributable to their theory of liability using conjoint analysis (as Dr. Howlett has done here) is sufficient for class certification purposes. 674 F. App'x at 657. Regardless, as recently noted by this Court, "[w]hether Plaintiff[] [is] successful in proving deceptiveness or not, the outcome of this issue affects the claims on a class-wide basis. The merits of this issue therefore do

---

[4] *Pelayo* has been largely criticized and not followed for its analysis of the term "natural." *See e.g., Surzyn v. Diamond Foods, Inc.*, No. 14-0136, 2014 WL 2212216, at *3 (N.D. Cal. May 28, 2014) (multiple definitions of "All Natural" is an insufficient basis to dismiss a complaint).

not preclude class certification." *Clay*, 2018 U.S. Dist. LEXIS 153124, at *19.[5]

### 2. Consumer Perception and Reliance is a Merits Based Analysis Not Appropriate at Class Certification.

Well-settled Ninth Circuit law squarely rejects Defendant's argument that Plaintiff's claims require individual analysis of consumer perception and reliance: "California consumer protection laws take an objective approach to the reasonable consumer, not the particular consumer." *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 568 (S.D. Cal. 2012)(Huff, J.)(citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).[6] This objective test "renders claims under the UCL, FAL, and CLRA ideal for class certification....For this reason, district courts in California routinely certify consumer class actions...alleg[ing] violations of the CLRA, FAL, and UCL." *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012) (citation omitted). Defendant nonetheless attempts to manufacture individual issues by focusing on the subjective preferences and expectations of Plaintiff and class members. However, as this Court held in *Clay*, "for all three California consumer protections claims, the issue is decided on a class-wide basis, regardless of each individual consumer's understanding." 2018 U.S. Dist. LEXIS 153124, at *18; *see also Astiana v. Kashi*, 291 FRD 493, 509 (S.D. Cal. July 30, 2013)(certifying an "all natural" class as it pertained to hexane processed soy ingredients because hexane

---

[5] The other cases cited are also distinguishable. For example, *Kosta v. Del Monte Foods, Inc.*, involved labeling variation among the product lines with some not containing the labeling at all. 308 F.R.D. 217, 221 (N.D. Cal. 2015). And, *Townsend v. Monster Beverage Corp.*, did not challenge "natural" labeling but instead challenged statements that the product was "hydrating," should be "consumed responsibly" and provided a "big bad buzz." 303 F.Supp.3d 1010, 1017 (C.D. Cal. 2018).

[6] *See also In re Ferrero*, 278 F.R.D. 552, 556 (S.D. Cal. 2011) (Huff, J.) (same); *Stearns*, 655 F.3d at 1020 ("[R]elief under the UCL is available without individualized proof of deception, reliance and injury").

is a synthetic material that "might be considered a material representation by reasonable consumers."). To the extent Plaintiff's CLRA claims require reliance, it can be proven by a classwide inference. *See, e.g., Beck-Ellman*, 283 F.R.D. at 568; *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 WL 4490860, at *5 (C.D. Cal. Sept. 28, 2012); *Chavez v. Blue Sky Natural Bev. Co.*, 268 F.R.D. 365, 376 (N.D. Cal. 2010)("[R]eliance…may be inferred as to the entire class if the named plaintiff can show that material misrepresentations were made to the class members."); *Johnson v. Gen. Mills, Inc.*, 276 F.R.D. 519, 521-22 (C.D. Cal. 2011) ("[T]he Ninth Circuit [has] explicitly recognized that a classwide inference of reliance for both affirmative misrepresentations and omissions is proper for a CLRA claim.").

Critically, materiality is governed by an objective standard, subject to common proof. *POM Wonderful*, 2012 WL 4490860, at *5. Common evidence presented by Plaintiff shows that the Gardenburger labels are material to consumers and drive profits.[7] Defendant engaged in a nationwide marketing campaign, communicating uniformly at the point of purchase with its customers. Kellogg cannot defeat class certification by claiming consumers buy its products for a variety of reasons.

Importantly, Defendant does not dispute that Gardenburgers contain hexane processed soy ingredients or that hexane is a federally recognized synthetic and toxic chemical. Defendant also does not dispute that reasonable consumers do not consider hexane to be a natural product. Rather, Defendant identifies disputed factual issues, all of which are all capable of resolution on a classwide basis. Indeed, the fact that Defendant engaged an expert to conduct a survey – regardless of the result of the survey – is indicative of the fact that Defendant agrees that common issues

---

[7] *See* Motion § II.D, III.D.4.a.; Ex. E at p. 3 (stating you can charge more by labeling products natural; conceding that such labeling allows for a higher premium of at least 17%; and showing overall materiality of the label.)

predominate over individual issues.[8]

Like the many food case that preceded this case, individual issues do not predominate here. *See e.g., Astiana v. Kashi Co.*, 291 F.R.D. at 509 (certifying class for products labeled "all natural" but containing hexane processed soy ingredients); *Brazil v. Dole Packaged Foods*, LLC, No. 12-CV-01831-LHK, 2014 U.S. Dist. LEXIS 74234, at *70 (N.D. Cal. May 30, 2014) (certifying Rule 23(b)(2) and (b)(3) classes challenging "All Natural" representations on label); *Werdebaugh*, 2014 U.S. Dist. LEXIS 71575, at *95 (certifying class under Rule 23(b)(3) based on "All Natural" statement on label); *Johnson v. General Mills, Inc.*, 275 F.R.D. 282, 288 (C.D. Cal. 2011) (certifying a class based on representation about "probiotic" bacteria made on yogurt container label).[9]

### C. Plaintiff is Both Adequate and Typical.

Defendant argues that Plaintiff is neither adequate nor typical because she purchased Gardenburgers both before *and* after Kellogg added the "Made With Natural Ingredients" labeling, meaning Plaintiff allegedly did not rely on the "natural" labeling in making her purchases *prior* to "Made With Natural

---

[8] Defendant attempts to claim – without any adequate support – that hexane does not remain in the end product. Plaintiff disputes this claim. Regardless, this also is a classwide issue subject to common evidence.

[9] The three cases relied upon by Defendant, *Hain Celestial, Jones* and *Algarin*, are again distinguishable. *In re Hain Celestial Seasonings Products Consumer Litigation* involved "100% natural" labeling on tea products where there were over 70 tea varieties but only 10 were at issue. Case No. 13-1757, 2015 WL 12001273, *2 (C.D. Cal. Sept. 23, 2015). Likewise, (as stated above) in *Jones* the consumers were exposed to label statements that varied by can size, variety, and time periods. 2014 U.S. Dist. LEXIS 81292, at *54. And, in *Algarin v. Maybelline, LLC*, a case involving "24 hour" lip color and makeup, there were a number of differences regarding the two products, including "pricing differences, claims differences, labeling differences." 300 F.R.D. 444, 452 (S.D. Cal. 2014). None of these issues are present here.

Ingredients" language being added to the packaging. Reliance, however, "is proved by showing that the defendant's misrepresentation [] was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). Plaintiff need not show that the misrepresentations were the only cause, or "even the predominant or decisive factor," influencing their conduct. *Id.* Regardless, "the test for California's consumer protection statutes is objective, and does not turn on the claimant's particular state of mind." *See Ries v. Ariz. Bevs. USA, LLC*, 287 F.R.D. 523, 539 (N.D. Cal. 2012). The point is that Plaintiff relied on the alleged misrepresentations. (*See* Motion, Ex. 3 at 211:11-14; Ex.4 at 198:5-19.) That she may have considered other factors does not make her atypical. *Bruno v. Quten Research Inst. LLC*, 280 F.R.D. 524, 534 (C.D. Cal. 2011)(rejecting argument that plaintiff was atypical because she considered other facts in making purchases); *Johns v. Bayer*, 280 F.R.D. 551, 557 (S.D. Cal. 2012)(same); *Ries*, 287 F.R.D. at 539 (slight variations in motivations for purchases is "inherent in consumer class actions."). Further, Plaintiff is an adequate representative because she is a member of the class she seeks to represent, shares the same claims and interest in obtaining relief as all other class members, and has no conflicts of interests with other Class members. *Beck-Ellman*, 283 F.R.D. at 567; *In re Ferrero Litig.*, 278 F.R.D. at 559; *see Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 157-58, n. 13 (1982)(noting that where the claims of the class and class representatives are coextensive, there is no conflict). Plaintiff has also demonstrated her adequacy through her participation thus far in this litigation. (*See* Motion, Smith Decl., ¶ 8.)[10]

---

[10] The cases cited by Defendant are distinguishable as Plaintiff is not subject to any similar unique defenses. *See Hanon v. Dataproducts*, 976 F.2d 497, 508 (9th Cir. 1992) (a securities class action where plaintiff had a practice of buying a minimal number shares of stock in various companies, and purchased only ten shares of stock in Dataproducts); *Yoon v. Gap, Inc.*, Case No. 08-05712, 2010 WL 11597565, at *5 (C.D. Cal. Oct. 6, 2010) (plaintiff was "not sure" if she saw the misrepresentations at
(Continued…)

Finally, this Court has already determined that Plaintiff has proper standing. (*See* JOP Order). And, the cases cited in support of Defendant's standing argument are distinguishable.[11] As stated in *Backus v. Con Agra Foods, Inc.* (a case cited by Defendant), purchasing "products at different times and for different reasons" is not atypical so long as the plaintiff purchased the products at some point during the time period when the label language was at issue. 2016 U.S. Dist. LEXIS 178227 at *7. Here, Plaintiff purchased Gardenburgers during the class period when they were labeled "Made With Natural Ingredients." Thus, she is typical.

## III. CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests the Court grant Plaintiff's Motion.

Dated: October 8, 2018

AEGIS LAW FIRM,

*s/ Samantha A. Smith*
By: Samantha A. Smith
Attorney for Plaintiff Tasneem Mohamed

---

issue).

[11] *See Joseph v. Costco Wholesale Corp.*, Case No. 14-06899, 2015 U.S. Dist. LEXIS 184917, at *16 (C.D. Cal. Aug. 27, 2015)(no standing where the plaintiff did not notice the label language at issue until *after* he purchased the product, and he did not purchase another product thereafter); *Backus v. Con Agra Foods, Inc.*, Case No. 16-454, 2016 U.S. Dist. LEXIS 178227, *8-11 (N.D. Cal. Dec. 22, 2016)(plaintiff's unique knowledge of trans fats and his continuing purchase of products *after* knowing the dangers associated with trans fats and *after* filing several law suits opened him up to unique defenses); *In re Autozone, Inc. Wage & Hour Empl. Practices Litig.*, 289 F.R.D. 526, 547-48 (N.D. Cal. 2012)(class was defined as employees who had been reimbursed at 30 cents per mile for using their personal vehicles, but plaintiff had never been reimbursed); *Jones*, 2014 U.S. Dist. LEXIS 81292, at *17-18 (plaintiff lacked standing because she testified that the label statements were not misleading).