UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASNEEM L. MOHAMED,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KELLOGG COMPANY,<br><br>　　　　　　　　　　Defendant. | Case No.: 14-cv-2449-L-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** |

Pending before the Court is Plaintiff's motion for class action certification. Defendant filed an opposition, and Plaintiff replied. This matter is submitted on the briefs pursuant to Civil Local Rule 7.1.d.1. For the reasons which follow, Plaintiff's motion for class certification is denied.

**I.　BACKGROUND**

Plaintiff is a consumer who purchased Gardenburger brand vegetarian hamburgers, which are produced by Defendant. Plaintiff alleges she relied on the representation on the package that Gardenburgers were "made with natural ingredients." However, Gardenburgers contain hexane-processed soy ingredients. Hexane is allegedly derived from crude oil, natural gas liquids, or petroleum refinery products. Soy beans are bathed in hexane to separate soybean oil from protein. According to the complaint, Gardenburgers contain two hexane-processed ingredients: soy lecithin and soy proteins.

1

Plaintiff claims that the presence of these ingredients renders the claim "made with natural ingredients" false and misleading to the consumers, and that based on this representation, consumers paid a price premium over comparable products which do not claim to be made with natural ingredients.

Plaintiff filed a putative consumer class action in State court, which Defendant removed to this Court. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

In her operative first amended complaint Plaintiff alleges violations of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, and California Uniform Commercial Code § 2313 (express warranty). Defendant moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The motion was granted insofar as Plaintiff lacks standing to seek injunctive relief and has not alleged sufficient facts to base any of her claims on the representations made on Defendant's website. (*See* doc. no. 35.)

Plaintiff moves to certify a class under Federal Rule of Civil Procedure 23(b)(3) defined as:

> All persons who between July 29, 2010 and approximately January 2016, purchased Gardenburger products in the State of California that were labeled "Made With Natural Ingredients" but contained hexane processed soy ingredients.

## II. DISCUSSION

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotation marks and citation omitted). A party seeking class certification must be prepared to show "through evidentiary proof" that it meets all requirements of Rule 23(a) and the requirements of at least one of the categories under Rule 23(b). *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The court must conduct
2

a rigorous analysis to determine whether these requirements are met. *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). If the court is not fully satisfied that the requirements of Rules 23(a) and (b) are met, certification should be denied. *Id.*

The parties' dispute pertains principally to the predominance requirement under Rule 23(b)(3), which requires a court to find, among other things, that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Proc. 23(b)(3).

To meet the predominance requirement, among other things, the "plaintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (internal quotation marks and citations omitted) (discussing *Comcast*). In *Comcast,* the plaintiffs advanced four theories of liability, only one of which was approved for class treatment. 569 U.S. at 35. The plaintiffs' proposed damage calculation would include damages caused by all four theories combined. *Id.* at 36. However, if the plaintiffs prevailed, they would be entitled only to damages resulting from one theory of liability. *Id*. at 35. The Court held,

> [A] model purporting to serve as evidence of damages in this class action must measure only those damages attributable to that theory. If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible to measurement across the entire class for purposes of Rule 23(b)(3).

*Id.*

Defendant argues that Plaintiff's proposed model of damages does not meet this standard.

> Plaintiff's theory of liability and damages is that consumers paid excess money for Gardenburger products under the mistaken belief that they were made with natural ingredients. . . . Thus, the damages at issue are the

/ / / / /

3

> monies paid by consumers for Gardenburger products that would not have been paid but for Gardenburger's misrepresentation.

(Pl.'s Mot. (doc. no. 66) at 26.) "The difference between what the plaintiff paid and the value of what the plaintiff received is a proper measure of restitution" under California consumer protection statutes. *In re Vioxx Class Cases,* 180 Cal. App. 4th 116, 131 (2009); *Colgan v. Leatherman Tool Group, Inc.,* 135 Cal. App. 4th 663, 694 (2006). The same measure applies to express warranty damages under California Uniform Commercial Code. *See* Cal. Comm. Code §§ 2714(2), 2721. Plaintiff refers to this measure of damages as the "price premium."[1] (Pl.'s Mot. at 26.)

Plaintiff proposes to calculate damages using a conjoint analysis. She submitted a report by her marketing and consumer behavior expert, Dr. Elizabeth Howlett, to support of the position that damages can be calculated on a classwide basis and show how the proposed analysis would be conducted. (*See* Howlett Report (doc. no. 66-3).)

Conjoint analysis is a quantitative consumer preference analysis used to measure the value consumers assign to various product attributes, including a representation that the product is "natural." (Howlett Report at 8.) This method has been used in marketing research since the 1970s. (*Id.*) In Dr. Howlett's opinion, it is possible "to use the conjoint analysis to quantify the percentage of the price premium for the 'Made With Natural Ingredients' label on Gardenburgers on a classwide basis." (*Id.* at 4.)

Dr. Howlett proposes to use the choice-based variant of the conjoint analysis. (Howlett Report at 9.) In a choice-based conjoint analysis, survey participants are presented with sets of products. (*Id.*) Each product in the set is described by specific

---

[1] Plaintiff indicates that she also seeks statutory damages under the Consumer Legal Remedies Act, disgorgement of Defendant's profits, and punitive damages. (Pl.'s Mot. at 13, 28-29.) These remedies are mentioned in a cursory manner, without elaboration, and without evidentiary support. Accordingly, Plaintiff has not met her burden with respect to these additional remedies.

4

attributes being tested, such as, for example, whether a flat screen TV is high-definition, the type of speakers, and the speed of the video card. (*Id.* at 9-10.) The participants are asked which product in the set, *i.e.*, which combination of attributes, they prefer. (*Id.* at 10.) After making the selection, the participants are presented with another set of products in the same category, *i.e.,* flat screen TVs, with different combinations of attributes, and are again asked which one they prefer. (*Id.*) After repeating the process multiple times with all the survey participants, "the mathematical algorithms underlying the conjoint analysis provide data about the relative importance weights of the tested attributes (which, when expressed as percentages, total to 100%)." (*Id.*)

Based on her extensive research of consumer response to, and interpretations of, food labels, Dr. Howlett proposes to select attributes which reflect realistic consumer choices for the product under study, and which comply with the conjoint survey design principles. (*See* Howlett Report at 11-12.) Before conducting the survey, she proposes to confirm the validity of her product attribute selections by conducting focus groups and a series of pilot tests. (*Id.* at 13.)

Defendant argues that Dr. Howlett's proposed analysis is incapable of calculating the price premium, and therefore cannot comply with *Comcast*. As stated in the report, the results of Dr. Howlett's survey will show the relative importance consumers ascribe to the surveyed Gardenburger attributes, including the representation that they were "made with natural ingredients." (Howlett Report at 10.) It is not apparent from the report how Dr. Howlett would translate these results to a price premium. Defendant contends that the conjoint analysis measures only the consumers' willingness to pay for a particular attribute, but does not consider the supply-side and market-based factors which influence product price, such as production costs, availability of competitor products, etc. (Opp'n (doc. no. 77) at 13-15 (citing Wilcox Decl. (doc. no. 77-1) at 8-9.)

Plaintiff counters that conjoint analysis withstood a similar challenge in *In re ConAgra Foods, Inc.,* 90 F. Supp. 3d 919 (C.D. Cal. 2015), *aff'd Briseno v. ConAgra Foods, Inc.,* 674 Fed. Appx. 654 (9th Cir. 2017). In *ConAgra,* Dr. Howlett's proposed

conjoint analysis was combined with a hedonic regression analysis conducted by another expert as follows:

> Plaintiffs propose to measure the classwide price premium attributable to their theory of liability using two steps: First, Plaintiffs will use hedonic regression analysis to calculate the price premium attributable to the "100% Natural" label; second, they will use conjoint analysis to segregate the portion of that premium attributable to a "no-GMO" understanding of the label.

*Briseno,* 674 Fed. Appx. at 657. To arrive at classwide damages, the price premium calculated by the first expert was multiplied by the percentage derived from Dr. Howlett's conjoint analysis. *In re ConAgra,* 90 F. Supp. 3d at 1025. This approach was affirmed notwithstanding the same challenge Defendant presents here. *Id.* at 1026 (contention that conjoint analysis by itself does not account for supply and market factors which influence price, and therefore also the price premium); *aff'd Briseno,* 674 Fed. Appx. at 657.

As in *ConAgra*, here Dr. Howlett proposes to "quantify *the percentage of* the price premium." (Howlett Report at 4 (emphasis added).) However, unlike in *ConAgra,* Plaintiff provides no indication how she intends to prove the price premium to which Dr. Howlett's percentage would be applied to arrive at the amount of damages. Plaintiff has not proposed to conduct a hedonic regression or any other type of analysis to calculate the price premium, which would account for the supply and market factors that influence price. Accordingly, Plaintiff has failed to carry her burden under Rule 23(b)(3) to show that her proposed method of calculating damages on a classwide basis will in fact measure damages attributable to her theory of liability. *See Comcast,* 569 U.S. at 35.

### III. CONCLUSION

Plaintiff's motion for class certification is denied without prejudice. If Plaintiff wishes to file another class certification motion supported with adequate proof, she must

/ / / / /

file it no later than 60 days after this Order is filed. The parties are expected to cooperate and expedite any additional discovery which may have to be conducted for this purpose.

**IT IS SO ORDERED.**

Dated: March 23, 2019

_____
Hon. M. James Lorenz
United States District Judge